**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISABILITY RIGHTS NEW JERSEY, INC., | |
| Plaintiff, | Civ. No. 10-3950(DRD) |
| v. | **O P I N I O N** |
| JENNIFER VELEZ, in her official capacity as Commissioner, State of New Jersey Department of Human Services, | |
| Defendant. | |

*Appearances by:*

WILLIAM EMMETT DWYER, ESQ
210 South Broad Street, Third Floor
Trenton, New Jersey 08608

KIRLAND & ELLIS LLP
by:   Robert Cohen, Esq.
       Michael David Reisman, Esq.
       Alexandra P. Kolod, Esq.
601 Lexington Avenue
New York, New York 10022

   *Attorneys for Plaintiff*

HOAGLAND, LONGO, MORAN, DUNST & DOUKAS
By:   Christopher J. Killmurray, Esq.
       Susan K. O'Connor, Esq.
40 Paterson Street
PO Box 480
New Brunswick, New Jersey 08903

   *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiff, Disability Rights New Jersey ("DRNJ") brings this action against Defendant Jennifer Velez in her capacity as Commissioner of the New Jersey Department of Human Services ("DHS"). Plaintiff represents psychiatric patients who either are or will be treated at psychiatric hospitals in the state of New Jersey. Plaintiff alleges that Administrative Bulletin A.B. 5:04, governing the involuntary administration of psychotropic drugs, is routinely violated in New Jersey hospitals. As a result, psychiatric patients are forced to consume psychotropic drugs against their will in violation of New Jersey law, the New Jersey and Federal Constitutions, and the regular and prudent practice of medicine. Plaintiff also alleges that the "Three Step" process by which patients are involuntarily medicated is constitutionally infirm even if followed, as it denies patients the ability to meaningfully challenge this dangerous violation of their bodies and minds.

On August 4, 2011 Defendant filed an answer to Plaintiff's complaint containing fifty affirmative defenses, many of which were boilerplate, inapplicable, and/or duplicative. After having given Defendant an opportunity to correct her pleading, Plaintiff now moves to strike dozens of the improper defenses. For the reasons set forth below, Plaintiff's motion is GRANTED. In addition, the Court will award Plaintiff attorneys' fees and costs incurred in connection with the motion.

## I.   BACKGROUND

The circumstances surrounding this case are well known to the parties and set forth in this Court's June 20, 2011 Opinion (Doc. No. 40). The facts relevant to this motion are as follows. DRNJ is a not-for-profit corporation that engages in advocacy on behalf of individuals with disabilities. Plaintiff is under contract with New Jersey to provide services as authorized

under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"). 42 U.S.C. § 10801 *et seq*. Pursuant to PAIMI, DRNJ has been allocated federal funds to "investigate incidents of abuse and neglect of individuals with mental illness", "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness", and initiate legal action "to ensure the protection of individuals with mental illness who are receiving care or treatment in the State…." Id.

DHS is a state agency that provides medical care and assistance programs for economically disadvantaged or disabled residents of New Jersey. As part of its role in caring for individuals suffering from mental illness, DHS operates five inpatient psychiatric hospitals (the "State Hospitals"). DHS also funds most of the cost of indigent inpatient care at six other psychiatric units and hospitals that are independently operated (the "County Hospitals").

Plaintiff brings this case as a broad challenge to the current rules and practices surrounding the involuntary administration of psychotropic drugs in New Jersey. Specifically, Plaintiff questions the application of Administrative Bulletin A.B. 5:04, published by the New Jersey Division of Mental Health and Hospitals and entitled "The Administration of Psychotropic Medication to Adult Voluntary and Involuntary Patients." (Complaint Ex. 3). A.B. 5:04 codifies procedures designed to protect the constitutional and statutory rights of patients receiving treatment for mental illness. Plaintiff claims that the procedures set forth in A.B. 5:04 are constitutionally infirm as written and rarely followed in practice. Plaintiff specifically alleges that the current regulatory regime permits patients to be forcibly injected with dangerous psychotropic medications against their will. (Complaint ¶ 83). Plaintiff sues for an order compelling Defendant to reform DHS regulations, procedures, and practices to appropriately

protect the rights of psychiatric patients as guaranteed by the United States and New Jersey constitutions and applicable laws.

On June 20, 2011, this Court denied, in part, Defendant's motion to dismiss this action[1], holding that "[t]here can be no doubt that all patients in New Jersey, including patients with severe mental illness or injury, have the right to participate meaningfully in the course of their treatment, to be free from unnecessary or unwanted medication, and to have their rights to personal autonomy and bodily integrity respected by agents of the state." (Doc. No. 40 at 5). The Court found that Plaintiff had presented "a panoply of serious allegations concerning the practice of psychiatric medicine in New Jersey hospitals" including practices that plainly violate existing New Jersey law. Id. at 9. Consequently, the Court refused to dismiss Defendant from this case.

Defendant filed her answer on August 4, 2011. The answer contains no fewer than fifty boilerplate affirmative defenses. The defenses are highly repetitive[2] and contain almost no factual specificity. Many appear to have no application to the claims presented by Plaintiff in its complaint. On August 9, 2011, Plaintiff advised Defendant by letter of the improper nature of many of her defenses. (Pl. Ex. A). On August 18, 2011, Defendant responded, withdrawing two of the defenses but refusing to negotiate concerning any of the others. (Pl. Ex. B). Plaintiff now moves this Court for an order striking 33 of the defenses, arguing that they are frivolous, irrelevant and/or legally insufficient. (Pl. Br. 3-4).

---

[1] The Court granted Defendants' motion to dismiss all claims against Mary O'Dowd, the acting commissioner of the New Jersey Department of Health and Senior Services ("DHSS").

[2] For example, Defense 4 states that "Plaintiff's complaint fails to state a cause of action upon which relief can be granted." Defenses 29, 34, 35, 36, and 37 each also assert that Plaintiff has "failed to state a claim upon which relief can be granted."

## II.     DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 12(f) provides that "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts have broad discretion in resolving motions to strike. Hanover Ins. Co. v. Ryan, 619 F.Supp.2d 127, 132 (E.D. Pa. 2007) (citing Cipollon v. Liggett Group, Inc., 789 F.2d 181, 185 (3d. Cir. 1986)). "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from [the pleading] any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." Receivables Purchasing Co., Inc. v. Engineering and Professional Services, Inc., 2010 WL 3488135, *2 (D.N.J. Aug. 30, 2010) (quoting Garlanger v. Verbeke, 223 F.Supp.2d 596, 609 (D.N.J. 2002)).

An affirmative defense may be stuck as "insufficient" if "it is not recognized as a defense to the cause of action." Tonka Corp. v. Rose Art Indus., Inc., 836 F.Supp. 200, 217 (D.N.J. 1993) quoting Total Containment, Inc. v. Environ Products, Inc., No. 91–7911, 1992 WL 208981 at *1 (E.D.Pa. Aug. 19, 1992). A defense may also be stuck if it has been rejected by the court on formal motion. In re Merck & Co., Inc. Vytorin ERISA Litigation, No. 08-CV-1974, 2010 WL 2557564, *2 (D.N.J. June 23, 2010) ("where the Court has already denied a motion to dismiss for failure to state a claim, the 'failure to state a claim' defense is no longer appropriate."); Trustees of Local 464A United Food and Commercial Workers Union Pension Fund v. Wachovia Bank, N.A., No. 09–668, 2009 WL 4138516, *2 (D.N.J. Nov. 24, 2009) ("Defendants are not permitted to reassert this argument, which the Court has already deemed insufficient, in the guise of an affirmative defense.").

Defendant's affirmative defenses raise a variety of legal issues, which the Court will address in turn.

### B.     Defenses Rejected by the June 20, 2011 Opinion

Defenses 4, 25, 29, 34, 35, 36, 37, and 38 repeatedly assert that Plaintiff lacks standing to sue, is not entitled to procedural rights, and/or has not stated a claim upon which relief can be granted. All of these arguments were raised and rejected in connection with Defendant's previously filed motion to dismiss. (Doc. No. 40). Defendant argues that these defenses are properly raised again in the answer to preserve Defendant's rights to move for reconsideration and/or appeal the decision. Defendant further claims that this point was "squarely addressed" in Everest Nat'l Ins. Co. v. Sutton, No. 07-722, 2009 WL 3335566 (D.N.J. Oct. 14, 2009), and argues that the Sutton case mandates denial of Plaintiff's motion. (Def. Br. 2).

While the Sutton case is on point, Defendant appears to have misapprehended the decision. The court in Sutton was faced with counterclaims and defenses in an answer that had already been dismissed in a prior summary judgment decision. Id. at *2. While the Sutton court acknowledged that the defendant was probably not seeking to "re-plead previously dismissed claims and defenses" it nevertheless ***granted*** plaintiff's "motion to dismiss these claims and defenses." Id. Sutton actually speaks to the appropriateness of granting a motion to strike where defenses have been eliminated through prior motion practice. This is in accord with other decisions on the issue. See In re Merck & Co.; Trustees of Local 464A.

Defendant can point to no other authority suggesting that she may re-litigate legally meritless defenses already rejected by the Court. Nor has she offered any basis for her assertion that including these defenses in her answer is somehow necessary to preserve her right to

6

reconsideration or appeal.[3] If Defendant wishes to appeal a final judgment of this Court, she has the right to do so. She may raise any legal or procedural challenges that she believes appropriate. Until then however she will not be permitted to waste the time and attention of the parties or the Court by continuing to reassert legally groundless defenses that have already been rejected. Defenses 4, 25, 29, 34, 35, 36, 37, and 38 are STRICKEN.

### C. Defenses Related to Damages

Plaintiff's complaint does not seek damages of any kind. (Complaint 75-78). Nevertheless, Defenses 1, 2, 3, 8, and 9 claim that Plaintiff's damages are not chargeable to Defendant as a result of contributory negligence, assumption of risk, third party intervention, failure of proximate causation, and/or unavoidable circumstances. In her opposition, Defendant attempts to argue that Plaintiff has asserted "non-monetary" damages in its complaint, but no such damages are identified. (Def. Br. 2). Moreover, the defenses that Defendant raises are fundamentally legal challenges to the imposition of monetary damages. It is hard to see what relevance such damages would have to background allegations of "non-monetary" harm.

Contrary to the ex-post justifications by Defendant, it is clear what happened here. Defendant's counsel appears to have carelessly copy-pasted boilerplate personal injury defenses into the answer despite their inapplicability. Consequently, Defenses 1, 2, 3, 8, and 9 are STRICKEN.

### D. Defenses Predicated on Absolute Immunity

In Defense 39, Defendant invokes the doctrine of absolute immunity. "Absolute immunity from liability has been accorded to a few types of government officials whose duties

---

[3] As a practical matter, Defendant has already waived her right to reconsideration of the June 20, 2011 ruling by failing to so move within 14 days of the entry of the opinion. L.Civ.R. 7.1(i).

are deemed as a matter of public policy to require such protection to enable them to function independently and effectively, without fear or harassment." Barrett v. United States, 798 F.2d 565, 571 (2d Cir.1986). While both Plaintiff and Defendant treat "absolute immunity" as one undifferentiated rule, it is actually an umbrella term for a variety of doctrines of different application. Larsen v. Senate of Com. of Pa., 152 F.3d 240, 253 (3d Cir. 1998) ("The various immunities, legislative, judicial, prosecutorial and official, have different purposes and characteristics.").

One species of absolute immunity, legislative immunity, immunizes state legislators "from suits for either prospective relief or damages." Supreme Court of Virginia v. Consumers Union of U. S., Inc., 446 U.S. 719, 732, (1980). This common law immunity "is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause" of the federal constitution. Id. at 734. The protection from suit extends both to members of the state assembly and to "local governmental bodies" who "are given a combination of proprietary, managerial and legislative powers" but "only with respect to the legislative powers delegated to them by the state legislatures…." Ryan v. Burlington County, N.J., 889 F.2d 1286, 1290 (3d Cir. 1989). To qualify for immunity, an act taken by a defendant must be "within the sphere of legitimate, legislative activity." Youngblood v. DeWeese, 352 F.3d 836, 841 (3d Cir. 2003). Additionally, if the defendant is a municipal officer or member of a delegated body "where individual officials are more likely to perform a mixing of administrative and legislative functions" (Id.)[4] the action taken (1) "must be 'substantively' legislative, i.e., legislative in character" and "involve policy-making decision of a general scope" and (2) "must be 'procedurally' legislative, that is, passed

---

[4] While the two-part Ryan test is not required of other state officials, the Court of Appeals has noted that "regardless of the level of government, we believe the two-part substance/procedure inquiry is helpful in analyzing whether a non-legislator performing allegedly administrative tasks is entitled to immunity." Baraka v. McGreevey, 481 F.3d 187, 199 (3d Cir. 2007).


by means of established legislative procedures." Ryan, 889 F. 2d at 1290-1291. Legislative immunity applies to actions for either damages or injunctive relief. Larsen, 152 F.3d 240, 253 (3d Cir. 1998) ("the Supreme Court has unambiguously held that the legislative immunity enjoyed by state, as well as federal, officials is applicable to § 1983 actions seeking declaratory and injunctive relief.") (internal citations omitted).

In contrast, judicial immunity "apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error." Forrester v. White, 484 U.S. 219, 225 (1988). In addition to judges, prosecutors, witnesses, and "other non-judicial officials whose acts are an integral part of the judicial process are also protected by absolute immunity for acts performed in that capacity." Brown v. Griesenauer, 970 F.2d 431, 435 (8th Cir. 1992). While judicial immunity provides complete protection from suits for damages, the Supreme Court has "never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts." Consumers Union, 446 U.S. at 735; see also Larsen, 152 F.3d at 253 ("The issue the Court left unresolved in Consumers Union did not concern *legislative* immunity but whether *judicial* immunity would bar prospective relief.") (emphasis in original). In the absence of guidance from the Supreme Court, the Court of Appeals for the Third Circuit has held that "absolute immunity is a bar to damages only, and not to prospective or injunctive relief" Larsen, 152 F.3d at 252 quoting Schrob v. Catterson (Schrob II), 967 F.2d 929 (3d Cir. 1992).

It is entirely unclear which variety of absolute immunity Defendant attempted to plead or what factual predicates she asserts for this defense. As a threshold matter, Plaintiff seeks only injunctive relief, and not money damages. In its brief, Plaintiff argues that the absolute immunity

pled by Defendant does not extend to actions for prospective injunctive relief, effectively arguing that Defendant asserts a judicial rather than legislative immunity. (Pl. Br. 14-15). Defendant's response is an incomprehensible muddle. In the first instance, Defendant argues that she is entitled to disregard Third Circuit precedent on the issue in advance of a definitive ruling by the Supreme Court. (Def. Br. 4). This is incorrect,[5] but suggests that Defendant agrees with Plaintiff's characterization of the proffered defense as a judicial immunity. If Defendant were asserting a legislative immunity, then she would not need to argue around the prior holdings of the Court of Appeals. But then Defendant argues that fact issues exist concerning whether her actions were "legislative in nature." Id. This second argument suggests that Defendant is attempting to instead assert a legislative immunity.

In either event, Defendant has not adequately pled the basis for any absolute immunity defense. Neither Plaintiff nor the Court should be required to guess at the character of Defendant's claim of immunity or the factual basis which supports it. F.D.I.C. v. Modular Homes, Inc., 859 F.Supp. 117, 121 (D.N.J. 1994) ("Affirmative defenses are pleadings; therefore, they are subject to Federal Rule of Civil Procedure 8(a), which calls for the pleader to set forth a short and plain statement, of the defense. Defenses that are nothing but bare bones conclusory allegations can be stricken.") (internal citations omitted); see also Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989) ("defenses must set forth a 'short and plain statement,' Fed.R.Civ.P. 8(a), of the defense.").

Defendant, in both her answer and her opposition papers, has failed to clearly identify which species of absolute immunity she feels that she is entitled to. She has also failed to identify any specific acts giving rise to this immunity. Consequently, Defense 39 is STRICKEN.

---

[5] See, e.g., Magnin v. Beeler, 110 F.Supp.2d 338, 344 (D.N.J. 2000) ("This Court is bound to follow not only the holding but also the reasoning set forth by the Third Circuit.").

### E.     Defenses Predicated on Qualified Immunity

Defenses 17, 18, 28, 41, 45, and 46 assert qualified immunity from suit.[6] Qualified immunity, or good faith immunity, "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However this defense does not apply to prospective claims for injunctive relief, as "[q]ualified immunity shields public officials from money damages only." Morse v. Frederick, 551 U.S. 393, 400 (2007); Brandt v. Monte, 626 F.Supp.2d 469, 478 (D.N.J. 2009) ("Qualified immunity is available only for individual capacity claims for damages.").

As stated above, Plaintiffs do not seek money damages. Consequently all qualified immunity defenses fail. Defenses 17, 18, 28, 41, 45, and 46 are STRICKEN.

### F.     Defenses Predicated on Sovereign Immunity

In Defenses 31, 32, and 48 Defendant asserts sovereign immunity. Defendant is not a sovereign and her ability to assert sovereign immunity as an agent of the state is limited. In particular, she may not assert sovereign immunity as a defense to prospective violations of the United States constitution. This basic rule is over a century old.

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The [action] is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional [action] to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in

---

[6]     Not all of the defenses listed use the term "qualified immunity," but in substance all rely upon the doctrine. For example Defense 43 claims that "Defendant did not know, and was not reasonably expected to know, that any actions taken by her with respect to Plaintiff's constituents, at all times relevant hereto, were in violation of Plaintiff's constituents'' constitutional, statutory or other rights." To the extent that this contention bears any relevance to the claims, it provides support to a defense of qualified immunity.

> attempting, by the use of the name of the state…If the [action] which the state [official] seeks to [perform] be a violation of the Federal Constitution, the officer, …comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.
>
> Ex parte Young, 209 U.S. 123, 160 (1908).

While the Young doctrine has evolved since its inception, it is still well-settled that a state official cannot assert sovereign immunity as a defense to claims for prospective injunctive relief under § 1983. Hindes v. F.D.I.C., 137 F.3d 148, 165 (3d Cir. 1988) ("The principle which emerges from *Young* and its progeny is that a state official sued in his official capacity for prospective injunctive relief is a person within section 1983, and the Eleventh Amendment does not bar such a suit."); see also Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("official-capacity actions for prospective relief are not treated as actions against the State."). Nor are claims seeking similar relief under the Americans with Disabilities Act or Rehabilitation Act barred by sovereign immunity. Koslow v. Commonwealth of Pa., 302 F.3d 161, 179 (3d Cir. 2002) ("federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex parte Young* doctrine.").

Defendant weakly asserts that Plaintiff's complaint makes reference to past violations of federal law. But this narrative color does not change the fact that Plaintiff has advanced no legal claims based on past conduct. As a consequence, Defendant may assert no viable sovereign immunity defense against this action. Defenses 31, 32, and 48 are STRICKEN.

### G.  Statute of Limitations Defenses

Defense 5 claims that Plaintiff's action is barred by "the applicable Statute of Limitations and/or Repose." As a threshold matter, this form pleading is insufficient under Rule 8(a).

12

Defendant has not adequately identified the specific statute of limitations or statute of repose which Defendant believes is appropriate. The vague contention that a limitations defense exists is insufficient to fairly put Plaintiff on notice as to the defense. But even had Defendant identified a relevant statute, Plaintiff's complaint alleges ongoing violations of its constituents' constitutional rights. No legal limitation is appropriate in the face of ongoing constitutional violations. Defense 5 is STRICKEN.

### H. Miscellaneous Inapplicable Defenses

In addition to the defenses discussed above, Defendant raises several additional defenses that merit little individual attention. Defenses 7, 12, 13, 19, 22, and 43 make various claims about Defendant's mental state. They assert that Defendant did not act with "malicious intent," or "deliberate indifference." Alternatively they claim that she either did not believe that her actions were improper or believed that her actions were "reasonable and necessary." None of the causes of action asserted by Plaintiffs requires that Defendant act with any particular mental state, and her subjective belief concerning the propriety of her actions is irrelevant. Consequently, Defenses 7, 12, 13, 19, 22, and 43 are STRICKEN.

Defense 15 claims that Plaintiff has not exhausted administrative remedies. This defense does not apply to § 1983 claims. Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 516, (U.S. 1982) ("exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). Nor do claims arising under the Americans with Disabilities Act or Rehabilitation Act require exhaustion of administrative remedies. Smith v. City of Philadelphia, 345 F.Supp.2d 482, 487 (E.D.Pa. 2004) ("Neither Title II of the ADA nor the Rehabilitation Act include a requirement that a plaintiff exhaust his or her administrative remedies before filing suit in federal court"); Freed v. Consolidated Rail Corp.,

201 F.3d 188, 194 (3d Cir. 2000) ("section 504 plaintiffs may proceed directly to court without pursuing administrative remedies."). Defense 15 is STRICKEN.

Defense 16 asserts that Defendant reserves the right to apply for sanctions under Rule 11 on the grounds that the complaint is frivolous and has been filed in bad faith. This is not an affirmative defense and is itself frivolous. Defense 16 is STRICKEN.

Defense 47 challenges the applicability of *respondeat superior*. Plaintiff has not attempted to assert liability on the grounds of *respondeat superior*. Nor would this case merit any possible use of that doctrine. Defendant has no basis for asserting this defense. Defense 47 is STRICKEN.

### I.     Attorneys' Fees

Plaintiff requests that it be awarded attorneys' fees and costs incurred in filing the instant motion. Plaintiff has attached correspondence with Defendant in which Plaintiff stated the reasons why the defenses struck by the Court were legally insufficient and improper. (Pl. Ex. A). Defendant refused to do so. (Pl. Ex. B). Plaintiff contends that Defendant's initial submission of dozens of frivolous defenses, as well as her failure to withdraw those defenses without the intervention of the Court make the imposition of reasonable attorneys' fees proper.

It is well recognized that "federal courts have inherent power to assess attorney's fees…even though the so-called 'American Rule' prohibits fee shifting in most cases." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). This inherent authority to assess fees as a sanction for frivolous or vexatious conduct has been supplemented by additional powers codified in the Federal Rules. See e.g. Fed. R. Civ. P. 26(g) (sanctions relating to initial disclosures), Fed. R. Civ. P. 37(a)(5) (sanctions relating to motions to compel), and Fed. R. Civ. P. 11(c) (sanctions relating to "[e]very pleading, written motion, and other paper" submitted to the court under

signature). The latent threat of monetary sanctions for bad behavior is designed to prevent needless and costly motion practice and to mandate some bare minimum of intellectual honesty with respect to pleadings and arguments that counsel submit to the court.

Defendant's answer is objectively improper as originally filed. After receiving it, Plaintiff provided Defendant with a clear opportunity to correct its pleading without the need for judicial intervention. The instant motion, with its attendant expenses, is entirely the result of Defendant's decision to cling to numerous frivolous defenses with no possible application to the case at bar. Plaintiff's motion should not have been required, and an imposition of fees is proper.

As a matter of practice, courts should not award attorneys' fees or other extraordinary sanctions without a notice or opportunity to be heard.[7] It is noted that Plaintiff put Defendant on notice of the possibility of fees before the instant motion was filed, and specifically requested an award of fees in their motion papers. (Pl. Ex. A) (Pl. Br. 21). In addition, at oral argument, the Court took up the issue of attorneys' fees and asked the parties whether they believed that further notice and hearing was required before fees could be awarded. Counsel for both parties waived such a hearing. Given these facts, the Court finds Defendant was given adequate notice and opportunity to be respond prior to the imposition of fees.

---

[7] This notice requirement is explicitly built into the structure of Rule 11. Under Rule 11(c)(1) a party to be sanctioned must be given "notice and a reasonable opportunity to respond…." While there is no such formal requirement concerning awards of fees made under a court's inherent powers, basic fairness notions of fairness require that a party be given at least some opportunity to explain its conduct.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion is GRANTED. The following defenses are STRICKEN from Defendant's Answer:

> 1, 2, 3, 4, 5, 7, 8, 9, 12, 13, 15, 16, 17, 18, 19, 22, 25, 28, 29, 31, 32, 34, 35, 36, 37, 38, 39, 41, 43, 45, 46, 47, and 48

Plaintiffs shall supply the Court with a certification of fees and costs related to this motion within two weeks of the date hereof.

<div style="text-align:right">

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

</div>

Dated: September 23, 2011